RECORD NO. 12-4039

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## HAROLD LEE SMALLS, JR.,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

––––––––––––

## BRIEF OF APPELLANT

––––––––––––

**Jill E. Major HaLevi**
**MEDIATION & LEGAL SERVICES, LLC**
**102-C Broad Street**
**Charleston, South Carolina 29401**
**(843) 819-0557**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ..............................................................1

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE.................................................................3

STATEMENT OF THE FACTS ..............................................................4

SUMMARY OF ARGUMENT ...............................................................6

ARGUMENT:.........................................................................................6

    I.    STANDARD OF REVIEW ...............................................6

    II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW
    WHEN IT DETERMINED AT THE SUPPRESSION
    HEARING THAT THERE WAS REASONABLE SUSPICION
    TO STOP MR. SMALLS ...................................................7

    III.    THE DISTRICT COURT ERRED AS A MATTER OF LAW
    WHEN IT LIMITED TESTIMONY AND EVIDENCE
    PRESENTED AT THE SUPPRESSION HEARING
    REGARDING MATTERS OF FACTUAL DISPUTE .....................10

    IV.    THE FACTUAL DETERMINATION MADE AT THE
    SUPPRESSION HEARING THAT THE LICENSE PLATE
    WAS "RUN" PRIOR TO MR. SMALLS' STOP IS
    ERRONEOUS AND CLEAR ERROR...............................................13

CONCLUSION ........................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Bumper v North Carolina,
    391 U.S. 543 (1968)................................................................10

Terry v. Ohio,
    392 U.S. 1 (1986).................................................................7

United States v. Branch,
    537 F.3d 328 (4th Cir. 2008) .............................................7

United States v Burke,
    605 F. Supp. 2d 688 (Dist. MD 2009)........................... 7-8

United States v Green,
    670 F.2d 1148 (D.C. Cir. 1981)......................................10

United States v Hassan El,
    5 F.3d 726 (4th Cir. 1993) ...............................................7

United States v. Hodges,
    19 F.3d 51 (D.C. Cir. 1994), cert. denied,
    116 S. Ct. 1283 (1996)....................................................10

United States v. Kelly,
    592 F.3d 586, (4th Cir.), cert. denied,
    130 S. Ct. 3374 (2010)......................................................7

United States v Law,
    528 F.3d 888 (DC Cir. 2008), rehearing and rehearing en banc denied
    Sept. 19, 2008 .................................................................10

United States v Melendez-Garcia,
    28 F.3d 1046 (10th Cir. 1994) .................................... 7-8

United States v. Murray,
    65 F.3d 1161 (4th Cir. 1995) .........................................................................11

United States v Rusher,
    966 F.2d 868 (4th Cir. 1992) ...........................................................................7

## **CONSTITUTIONAL PROVISION**

U.S. Const. amend. IV ...........................................................................................7

## **STATUTE**

18 U.S.C. § 922(g)(1).........................................................................................1, 3

18 U.S.C. § 924(a)(2).........................................................................................1, 3

18 U.S.C. § 924(c)(1).........................................................................................1, 3

18 U.S.C. § 924(e) .............................................................................................1, 3

21 U.S.C. § 841(a)(1).........................................................................................1, 3

21 U.S.C. § 841(b)(1)(B) ...................................................................................1, 3

28 U.S.C. § 1291 ....................................................................................................2

S.C. Code § 56-5-2120(d) ......................................................................................8

S.C. Code § 56-5-2150............................................................................................8

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case arises from the criminal prosecution of the Appellant in the United States District Court for the District of South Carolina, Charleston Division.  The indictment alleged in Count I that on or about September 18, 2009, the Appellant, having been convicted of a felony, did knowingly possess a firearm and ammunition that had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e).  JA 11.  Count II charged that on the same date, Mr. Smalls knowingly possessed with the intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).  JA 12.  In Count III, Mr. Smalls is alleged to have knowingly used and carried a firearm during and in relation to a drug trafficking crime, on or about September 18, 2009,in violation of 18 U.S.C. § 924(c)(1).  JA 13.

On April 27, 2010, the Appellant, through prior counsel, filed a Motion to Suppress the evidence based on lack of reasonable suspicion or probable cause.  JA 14.  On September 9, 2010, the Government filed a written Response to the motion.  JA 16-23.  Appellant was appointed new counsel on March 15, 2011, and on June 30, 2011, Appellant's new counsel filed a Memorandum in support of the earlier filed Motion to Suppress and in response to Government's Response.  JA

1

24-26. On July 19, 2011, a suppression hearing was held, and the Motion to Suppress was denied. JA 8.

Appellant signed a plea agreement on August 28, 2011, and pursuant to the terms of that agreement, he pled guilty to counts One and Two of the indictment on August 30, 2011. JA 8. The plea entered was conditional, preserving Appellant's right to appeal the denial of his suppression motion. JA 10. On January 11, 2012, Mr. Smalls was sentenced to the mandatory minimum term of 180 months' imprisonment, and the Judgment was entered on January 17, 2012. JA 9, JAII 122. Appellant timely filed a notice of appeal on January 19, 2012. JA 9. This appeal is from the final order (including the denial of the motion to suppress) of the district court. Appellate jurisdiction is based upon 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in denying appellant's motion to suppress in that:

   a. As a matter of law, there was no reasonable suspicion sufficient to justify stopping Mr. Smalls; and

   b. The limitations placed on the scope of evidence and testimony at the suppression hearing prevented the district court from accurately assessing the credibility of the witnesses, in violation of Mr. Smalls' Constitutional rights; and

      c.    The district court made clearly erroneous factual conclusions regarding the basis for the stop and search of Mr. Smalls.

## STATEMENT OF THE CASE

This case arises from the criminal prosecution of the Appellant for three charges: unlawful possession of a firearm by a convicted felon, possession with the intent to distribute 5 grams or more of crack cocaine, and possession of a gun in connection with a drug trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B); 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e); and 18 U.S.C. § 924(c)(1). JA 11-13. At the suppression hearing, over Mr. Smalls' counsel's objection, the district court limited testimony to one officer and two issues, denied the introduction of photographs, and indicated that he did not want to hear Appellant's testimony. JA 31, 36, 37, 48, 51-52, 54. Following the denial of his suppression motion on July 19, 2011, Mr. Smalls conditionally pled guilty on August 30, 2011 to Counts one and two of the indictment. JA 8, 10. He was sentenced on January 11, 2012. JA 9.

The issues raised in this appeal are whether the district court erred as a matter of law regarding the initial basis for the traffic stop at the suppression hearing, and whether the limitations placed on testimony and evidence, combined with the contradictory evidence received, resulted in a factually erroneous decision by the trial judge. If any of these issues are resolved in Mr. Smalls' favor, the

evidence seized in violation of the law should be suppressed, and this case should be remanded so that Appellant may withdraw his conditional plea of guilty.

## STATEMENT OF THE FACTS

This case arose from a traffic stop conducted on Appellant by City of Charleston police ("Team One Power Shift") on the night of September 17, 2009. JA 38-39. On the night in question, Officer Light, who testified at the suppression hearing in this case, was in a police car with Officer Burke, and Officers Bailey and Keener were in a separate car, communicating between cars by radio back and forth. JA 40.

Officer Light's car followed Mr. Smalls and observed him turn left from a delineated left turn lane at an intersection with an arrow for left turns, without activating his turn signal 100 feet in advance. JA 40, 48. At some point thereafter, Officer Light called to Officer Bailey to ask him to run the license plate tag ("tags") on the car being driven by Mr. Smalls. JA 41.

Officer Light's police report indicated that the incident occurred at 11:15 p.m., with the stop being based on the alleged turn signal violation and the fact that the tags on the car Mr. Smalls was driving were suspended. JA 42. The officers were communicating using radios that were not connected to the police dispatch system, and – in violation of department policy – the officers did not notify dispatch at the time they initiated the traffic stop. JA 46-47. Additionally, there

4

were no video cameras or audio recorders in use, so there is no record (other than Officer Light's report) of when the traffic stop was initiated. JA 51. According to dispatch records and Officer Light's testimony, the tags were run at exactly 11:20 p.m. JA 50.

Officer Light testified that within one block from the location where the alleged traffic violation occurred, Mr. Smalls pulled the car over and officers approached to investigate. JA 50. Due to the limitations imposed by the trial judge at the suppression hearing, there is no additional testimony regarding the search and arrest of Mr. Smalls. JA 31, 36, 37.

Once Mr. Smalls was apprehended additional bases for suspicion/search noted by police included: observation of a scale, strong odor of marijuana, and an admission by Mr. Smalls that he had earlier smoked marijuana. JAII 111. Additionally, the report noted, Mr. Smalls gave consent for a search of his person. JAII 111. The entire traffic stop, from initiation until the time drugs were found on Mr. Smalls' person, was "relatively quick," "within a few minutes probably." JA 51.

Mr. Smalls was found to have approximately 16 grams of crack cocaine and 1.26 grams of marijuana on his person and a gun was located in the concealed center console of the car. JAII 111.

## SUMMARY OF ARGUMENT

1) The traffic violation that caused the police to stop Mr. Smalls was not merely pretextual; as a matter of law, it was not a valid basis for a stop. Therefore, everything that followed is the "fruit of the poisonous tree" and should be suppressed.

2) The district court's limitation of the evidence and testimony permitted at the suppression hearing in this case unconstitutionally deprived Mr. Smalls of the opportunity to fully challenge the basis for his arrest and led to erroneous conclusions of fact.

3) The police learned that the license plate on the car Mr. Smalls drove was suspended only after he had been detained and therefore this should not have been considered to be "reasonable suspicion" for the stop of the car.

## ARGUMENT

### I.     STANDARD OF REVIEW.

This court reviews the denial of a motion to suppress using a dual standard: The district court's legal determinations are reviewed *de novo* and its factual determinations are reviewed for clear error. United States v. Kelly, 592 F.3d 586, 589 (4th Cir.), cert. denied, 130 S. Ct. 3374 (2010).

## II. THE DISTRICT COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THERE WAS REASONABLE SUSPICION TO STOP MR. SMALLS.

The Fourth Amendment of the United States Constitution guarantees "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." An automobile stop is a seizure of a person implicating the Fourth Amendment, and such an apprehension of a person must be based on reasonable suspicion or probable cause, such as a traffic violation. United States v. Branch, 537 F.3d 328 at 335 (4th Cir. 2008) *citing* Terry v. Ohio, 392 U.S. 1 (1986).

This Court has held that pretextual bases for traffic stops are permissible United States v Hassan El, 5 F.3d 726, 730 (4th Cir. 1993). However, if there is *no* legitimate basis for a traffic stop, then all evidence seized as a result of that stop, even if an additional basis was later established for the search, must be suppressed as "fruit of the poisonous tree." United States v Rusher, 966 F.2d 868 (4th Cir. 1992) *and progeny.* Even if a legitimate basis for stopping a vehicle is discovered after the stop, or if consent is given after an illegal stop, the fact that there was no reason to stop the car initially taints the entire stop and requires suppression of all evidence obtained from that stop. United States v Burke, 605 F. Supp. 2d 688, 693-694 (Dist. MD 2009), *citing* United States v Melendez-Garcia, 28 F.3d 1046, 1053

(10th Cir. 1994) (denying the Government's request to "uphold a pretextual stop without the pretext").

The initial basis for stopping Mr. Smalls was an alleged violation of South Carolina's traffic law requiring a left turn signal, which reads:

> (a)     No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal as provided for in this section.
>
> (b)     A signal of intention to turn or move right or left *when required* shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."

S.C. Code § 56-5-2150.  *Emphasis added.*

The law does not specify what "when required" means, but the same statute provides that "Where a *special lane for making left turns by drivers proceeding in the opposite directions has been indicated* by official traffic-control devices:

> 1.  A left turn shall not be made from any other lane.
>
> 2.  *A vehicle shall not be driven in the lane except when preparing for or making a left turn* from or into the roadway or when preparing for or making a U turn when otherwise permitted by law.

S.C. Code § 56-5-2120(d). *Emphasis added*.

In the instant case, Mr. Smalls utilized a left turn lane that was designated both by special lane and by its own turn signal.  JA 48.  Testimony indicated that

he turned left from the proper lane and that in addition to utilizing that the proper lane with its special turn signal, Mr. Smalls used his car's turn signal, as he made the turn. JA 40. Because the turn signal was not activated 100 feet prior to arrival at the intersection, this was considered by police to constitute a violation of the law. JA 40.

In analyzing the plain meaning of this traffic code, it does not appear that failure to use a turn signal when turning from a *designated left turn lane* violates either the letter or the spirit of this law. Therefore, this cannot be used as a legal basis for the traffic stop. The district court failed to analyze this statute, stating only that "[t]he statute, though I take judicial notice of it, offers you no solace in that regard." However, this is a legal issue for *de novo* review by this Court, and as such the Court is urged to engage in meaningful analysis of this matter. If there was no legal basis for the stop initially, then all the reasonable suspicion established after the stop is irrelevant and the evidence must be suppressed.[1]

---

[1] Even if this Court determines that the South Carolina statute requires advance activation of a turn signal while in a left turn lane, the district court's limitations on testimony at the suppression hearing prevent this Court from examining the totality of the circumstances regarding the scope and nature of the detention and renders the lower court's findings without factual basis, as described in Section III, *infra*.

### III.   THE DISTRICT COURT ERRED WHEN IT LIMITED TESTIMONY AND EVIDENCE PRESENTED AT THE SUPPRESSION HEARING REGARDING MATTERS OF FACTUAL DISPUTE.

A suppression hearing has been deemed to be a "critical stage of the prosecution" that affects a criminal defendant's substantial rights, and limitation of cross-examination "must be justified by weighty considerations." United States v. Hodges, 19 F.3d 51 (D.C. Cir. 1994), cert. denied, by 116 S. Ct. 1283 (1996), *citing* United States v Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981). If there are no factual disputes, an evidentiary hearing is not needed. United States v Law, 528 F.3d 888 (DC Cir. 2008), rehearing and rehearing en banc denied Sept. 19, 2008. However, where there is a question regarding voluntariness of consent, the Government bears the burden of proving that consent was freely and voluntarily given. Bumper v North Carolina, 391 U.S. 543, 548 (1968) *and progeny*. In order to decide what evidence should be admitted during a suppression hearing, particularly one in which the voluntariness of consent may be challenged, a judge must determine what the totality of the circumstances might show, and how much testimony is needed in order to elicit that information. In assessing the behavior reported by police and determining whether police conducted a reasonable search in a particular case, "it is the role of the district court to observe witnesses and

10

weigh their credibility during a pre-trial motion to suppress." <u>United States v. Murray</u>, 65 F.3d 1161, 1169 (4th Cir. 1995).

In this case, the district court indicated *prior* to hearing any testimony that he would not exercise judgment as to credibility, suggesting that there is no value in assessing credibility between police and a criminal defendant, stating:

> [I]f we had a swearing contest as to what happened, the police officer says one thing, the defendant says another, we could have that in every case on every issue. So we need a little more than that…"

JA 31.

The district court continued further:

> I don't want to get into a position that in every case I'm going to have somebody make a motion to suppress, when there's a difference in opinion as to what happened, and there's going to be a swearing contest as to what took place. Because that's not helpful to anybody and it's a waste of time.

JA 36.

Additionally, the trial judge made it clear that he would limit the scope of the hearing as to the number of issues to be addressed:

> The police officer's here. I'll let him address two things that you've brought up. I don't think the statute affords you any help, but I'll let him talk about the left turn signal and why he stopped the person. And I'll also let him address the issue of when they made the license tag check and what they found. And I'm not going to go through a whole lengthy bunch of cross-examination, but we'll get into that.

JA 36.  When defense counsel objected to these limitations, particularly as to the need for the Government to establish voluntariness of the consent later given by Appellant, the trial judge reiterated:

> Well, that's just a swearing contest.  If the officer's going to say he smelled marijuana and they saw a scale in plain sight and he was uncooperative, and then later when they got him out of the car it was a swearing contest as to what he admitted and what he didn't admit, I'm not retrying the case to get to that point, so I'm going to limit it in scope to what I've got.

JA 37.

The motivation of the trial judge appeared to be efficiency and not using too much time, as reflected in judicial comments as well as those made by counsel.  JA 36, 38, 42, 47, 48, 50, 52.  At least two other officers from the incident were available to testify, but the trial judge chose to rely instead on only one officer.  JA 36, 37, 52.  The district court's unwillingness to conduct a meaningful assessment of all the evidence, or to examine the totality of the circumstances in this pretrial hearing deprived Mr. Smalls of his right to require the government to establish a legitimate basis for detaining and searching him.  Further, the lack of evidence before the judge regarding the entirety of the detention and search precluded the trial court from assessing whether the totality of the circumstances rendered Mr. Smalls' consent to search involuntary.

IV.   **THE FACTUAL DETERMINATION THAT THE LICENSE PLATE WAS "RUN" PRIOR TO MR. SMALLS' STOP IS ERRONEOUS AND CLEAR ERROR.**

The final question for this Court involves a factual dispute as to whether the suspended status of the car's license plate was known prior to or subsequent to Mr. Smalls' detention.  Was the suspended license plate used as a basis for the stop or was it discovered later, and used as a justification after the otherwise illegal stop?

At the suppression hearing, Officer Light testified that the incident time of 11:15 pm was an approximation, despite the fact that this was not so indicated in his report; he asserted that the omission of the word "approximate" was a "typo." JA 49.  On cross-examination, Officer Light acknowledged that in other portions of his report, he used "approximately" to indicate times that were not certain.  JA 49.

Officer Light continued his testimony, stating that "as a result" of seeing Mr. Smalls turn left without activating his turn signal 100 feet prior to reaching the intersection, Officer Light *then* called Officer Bailey with the tag number.  JA 41.

Officer Light further testified that when Mr. Smalls "turned south on King Street from Mt. Pleasant Street, that's when the traffic stop was initiated" based on *both* the "improper turn and suspended tags," and that the stop was made "exactly" one block from the site of the "improper turn."  JA 41, 50.  Dispatch was not notified of this stop until after the arrest was made, in violation of department

13

policy. JA 46. Officers' failure to notify dispatch also meant that there was no official record of the time the stop was initiated.

Officer Light agreed that, based on records from the computer, the tags were run at exactly 11:20 pm. JA 50. Officer Light also testified that from the time Mr. Smalls was apprehended until the time drugs were found on his person, only "a few minutes" elapsed. JA 51. Thus if all documentation prepared from the night of the arrest is relied upon, it is clear that the tags were not run until *after* Mr. Smalls was placed under arrest.

The question regarding timing of running the tags relative to the time of the search and arrest of Mr. Smalls is related to the issue of whether the trial court erred in limiting testimony and evidence. While deference must be shown to the trial court in its credibility determinations, the fact that the district court limited testimony to one officer whose testimony contradicted some crucial information in his own report and testimony leaves this Court in a difficult position. An evaluation of the totality of the circumstances, complete with testimony from other officers and Appellant witnesses, would have revealed whether the single officer's testimony was as reliable as the district court prejudged it to be.

## CONCLUSION

Mr. Smalls' Constitutional right to remain free from unreasonable search and seizure was violated on September 17, 2009. The initial basis for the traffic stop was based on incorrect interpretation of local statutory law. Because there was no legal basis for stopping Mr. Smalls, the "reasonable suspicion" that was developed following the traffic stop must not be considered in the Court's assessment. Mr. Smalls' conviction was based on evidence derived as "fruits of the poisonous tree."

Based on these violations of law and erroneous conclusions reached by the trial court at the suppression hearing, the evidence seized as a result of his unconstitutional seizure should be suppressed, and this case should be remanded with instructions that Mr. Smalls be permitted to withdraw his guilty plea.

Respectfully submitted,

/s/ *Jill E.M. HaLevi*
Jill E.M. HaLevi
MEDIATION & LEGAL SERVICES, LLC
102-C Broad Street
Charleston, South Carolina 29401
(843) 819-0557

ATTORNEY FOR APPELLANT

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
     28.1(e)(2) or 32(a)(7)(B) because:

     [ X ] this brief contains [*3,449*] words, excluding the parts of the brief
     exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

     [     ] this brief uses a monospaced typeface and contains [*state the number
     of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
     32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
     32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     [ X ] this brief has been prepared in a proportionally spaced typeface using
     [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

     [     ] this brief has been prepared in a monospaced typeface using [*state
     name and version of word processing program*] with [*state number of
     characters per inch and name of type style*].


Dated: <u>April 30, 2012</u>                          <u>/s/ Jill E.M. HaLevi</u>
                                                      *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of April, 2012, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Robert N. Bianchi
> OFFICE OF THE U.S. ATTORNEY
> 101 Meeting Street
> Charleston, South Carolina  29402
> (843) 727-4381
>
> *Counsel for Appellee*

I further certify that on this 30th day of April, 2012, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above addresses.

/s/ Jill E.M. HaLevi
*Counsel for Appellant*